[S. F. No. 16377. In Bank.—February 20, 1941.]

JANET D. ROBINSON, Respondent, v. CHARLES J. Mc-COLGAN, as Franchise Tax Commissioner, etc., Appellant.

Earl Warren, Attorney-General, H. H. Linney, James J. Arditto and Valentine Brookes, Deputies Attorney-General, for Appellant.

Edward Hale Julien for Respondent.

McCutchen, Olney, Mannon & Greene, as *Amici Curiae*, on behalf of Respondent.

CURTIS, J.—This is an appeal by the defendant, as Franchise Tax Commissioner of the State of California, from a judgment directing a refund of the income tax for the year 1936 paid by plaintiff under protest.

There is but a single question of law presented for decision, to wit: Was plaintiff, a nonresident of the United States, taxable under the California Personal Income Tax Act of 1935 [Deering's Gen. Laws, 1937, Act 8494] on in-

come from dividends declared on shares of stock of a California corporation, the stock certificates being in the custody of plaintiff's agent, a California national bank?

The facts upon which this appeal is based were stipulated and are substantially as follows: During the year 1936 plaintiff, a citizen of the United States, was a resident of the International Settlement in Shanghai, China, and thus was a nonresident both of California and of the United States. During said year she received as income dividends in the amount of $78,780.50 on common stock of W. P. Fuller & Company, a California corporation. The stock certificates were not used in connection with any business operations carried on here by plaintiff, but were simply held by the Bank of America in a living trust in San Francisco for the sole purpose of receiving the dividends thereon and forwarding the same to plaintiff. This trust had no fixed situs in California, but could be removed from the state at any time by the plaintiff, the trustor, without any previous consent of the trustee bank. The latter had no duties under this trust other than as custodian of these certificates of stock to send the income from the trust to the plaintiff, the trustor. The only asset of this trust was the aforementioned stock, and the trustee bank had no power to sell, invest or reinvest the trust *corpus* or property, nor had it any active duties of trust management.

Plaintiff reported these dividends on her income tax return for the year 1936 and paid as tax on this income the amount of $5,140.86. In due course plaintiff filed a refund claim, which was rejected by the defendant as Franchise Tax Commissioner, whereupon plaintiff brought this action to recover said sum. The cause was submitted on the foregoing stipulated facts, and the trial court rendered judgment decreeing that plaintiff recover from defendant as Franchise Tax Commissioner the aforesaid amount as income taxes erroneously paid for the year 1936. Defendant Tax Commissioner has appealed from this judgment.

Appellant's alleged authority for imposing the tax on respondent was found in section 5 of the California Personal Income Tax Act of 1935, which provided in part as follows:

"There shall be levied, collected and paid for each taxable year upon the entire net income of every resident of this State and upon the income of every nonresident which is derived from sources within this State, taxes in the following

amounts . . . " (Stats. 1935, chap. 329 [Deering's Gen. Laws, 1937, Act 8494].)

In support of his contention that income from the dividends declared on the stock in question was properly the subject of this tax provision, appellant devotes practically all of his argument to a discussion of constitutional principles, with particular emphasis on the *power* of California to tax a nonresident living outside of the United States on intangibles, the evidences of which are physically present within this state. In this connection appellant relies strongly on the *Estate of McCreery,* (1934) 220 Cal. 26 [29 Pac. (2d) 186], which followed the doctrine of *Burnet* v. *Brooks,* (1933) 288 U. S. 378 [53 Sup. Ct. 457, 77 L. Ed. 844, 86 A. L. R. 747], a federal estate tax case, which involved only the element of physical presence of securities within the United States and none of the elements of business situs. In the aforementioned California case this court upheld the *power* of the legislature to subject to the California inheritance tax stock in a California corporation belonging to a nonresident alien, represented by certificates physically present, but having no business situs in California at the time of decedent's death. The difficulty we find with this line of argument adopted by appellant is the fact it assumes, apparently without question, that the dividends declared on this nonresident's stock by a California corporation were "derived from sources within this state" within the meaning of the act. But in our opinion the determination of source of this income is the crux of the problem presented here for consideration, and it is, therefore, to the matter of statutory interpretation that we first turn our attention. It is only if this issue is decided against respondent that the principle of constitutionality becomes important to our decision in this case.

The significant words to be construed in section 5 quoted above are "income . . . derived from sources within this state". In this connection we refer to this court's pertinent discussion of statutory interpretation in its decision rendered today, involving issues closely related to the instant case (*Miller* v. *McColgan, post,* p. 432 [110 Pac. (2d) 419]) wherein the rule of *mobilia sequuntur personam* was applied in holding that dividends declared by a Philippine corporation were *income from sources within California* because they were the product of intangible property (corporate stock) having a situs in California at the domicile

of the owner, a resident of California. By analogy it appears to be indisputable that here the dividends, subject of a naked California trust, have their source in corporate stock whose situs is at the residence of respondent in Shanghai, China, so that the income sought to be taxed by appellant would not be included within the meaning of section 5 as we construe the legislative intention expressed therein. It is our conclusion that since the issue of statutory construction in favor of respondent is decisive of this case, we need not consider here the constitutional questions involved in multiple taxation of nonresidents having evidence of their ownership of intangible property within the taxing jurisdiction.

The judgment is affirmed.

Edmonds, J., Shenk, J., Carter, J., Spence, J., *pro tem.*, and Gibson, C. J., concurred.

Traynor, J., took no part in the consideration or decision of this case.

A petition for a rehearing was denied March 20, 1941. Traynor, J., took no part in the consideration or decision of this matter.