STATE ex rel. MELVINA W. GRAFF and Another v. PROBATE COURT OF ST. LOUIS COUNTY and Another.[1]

February 5, 1915.

Nos. 19,100—(295).

**Inheritance tax — construction of reciprocal exemption.**
    1. The reciprocal exemption amendment to our inheritance tax law, made

[1] Reported in 150 N. W. 1094.

Note.—On the question of physical presence or absence of personal property, or evidence thereof, as affecting liability to tax, see note in 46 L.R.A.(N.S.)

in 1911, applies only where the laws of another state impose an inheritance tax upon "transfers of personal property of decedents," but "exempt or do not impose a tax upon transfers of personal property of residents of Minnesota having its situs· in such state";. and the laws of another state which impose such tax only where the property passes to collateral relatives or strangers, but do impose such tax where personal property within such state, belonging to residents of Minnesota, passes by will to such collateral relatives or strangers, do not bring the property of residents of that state within such exemption.

**Tax on nonresident's estate.**

2. A nonresident decedent's personal property, having a situs in this state, is subject to the succession tax of this state, although the devolution of such property is governed by the law of the decedent's domicile.

**Construction of inheritance tax.**

3. The language of our statute indicates an intention on the part of the legislature to impose a succession tax in all cases in which it has the power to impose such tax, and the statute cannot be construed as applying only where the devolution of the property is governed by our laws.

**Same — debts due from residents — stock in domestic corporations.**

4. The devolution of debts owed by residents of this state, whether evidenced by promissory notes or not, and of the stock of corporations of this state, and of the stock of national banks located in this state, is subject to a succession tax in this state, although the debts were owing to, and the stock was held by, nonresident decedents.

**Act constitutional.**

5. The inheritance tax statute, as amended, does not infringe the constitutional provision that "no law shall embrace more than one subject, which shall be expressed in its title," nor the equality provisions of the state or Federal Constitution, nor the provision against impairing the obligation of contracts.

Upon the relation of Melvina W. Graff, in person and as executrix of the estate of Edmund D. Graff, deceased, this court issued its writ of *certiorari* directed to the district court for St. Louis county

1167. And as to the liability of a debt due from a resident to a nonresident to succession tax, see note in 4 L.R.A.(N.S.) 953. And for taxation of stock in a domestic corporation belonging to the estate of a nonresident, see notes in 19 L.R.A.(N.S.) 887 and 25 L.R.A.(N.S.) 384.

The question of the constitutionality of succession taxes is treated in notes in 33 L.R.A.(N.S.) 592 and 50 L.R.A.(N.S.) 991.

and Honorable S. W. Gilpin, as judge thereof, to review the proceedings in that court in determining the amount of the inheritance tax due the state of Minnesota from said estate. Writ quashed.

*Lyndon A. Smith,* Attorney General, and *William J. Stevenson,* Assistant Attorney General, for respondents.

*Francis W. Sullivan,* for relators.

*Harlan P. Roberts,* as *amicus curiæ,* filed a brief in behalf of relators.

TAYLOR, C.

Edmund D. Graff, a resident of the state of Pennsylvania, died in that state on June 3, 1912, leaving a will by which he gave all his property to his wife, Melvina W. Graff, and in which he designated her as executrix thereof.

The will was admitted to probate in the state of Pennsylvania, and was subsequently admitted to probate in St. Louis county in this state. The inventory filed in the probate court of St. Louis county listed the following property for administration in that court:

| | |
|---|---:|
| Real estate situated within the state of Minnesota of the value of | $84,825 |
| 152 shares of capital stock of First National Bank of Duluth, Minnesota, of the value of | 68,400 |
| 25 shares of capital stock of the First State Bank of Tower, Minnesota, of the value of | 3,500 |
| 993 shares of capital stock of Scott-Graff Lumber Co., a Minnesota corporation, of the value of | 238,320 |
| A promissory note executed by Scott-Graff Lumber Co., of the value of | 13,702 |
| Book account due from Scott-Graff Lumber Company of the value of | 80,260 |
| Total | $489,007 |

On the ground that our laws impose a tax upon the right to succeed to the ownership of the property above mentioned, the attorney general, on behalf of the state, presented a claim for such tax to the

probate court. After an extended hearing, the claim was allowed. Thereupon the administratrix sued out a writ of *certiorari* and brought the matter before this court.

1. Among the amendments made to the inheritance tax law by the legislature of 1911 was the following:

"No tax shall be imposed, however, upon any transfer of personal property within this state owned by a nonresident of this state at the time of his death, where by the laws of the state of the decedent's domicile, an inheritance, succession or transfer tax is imposed on transfers of personal property of decedents, provided the laws of such state exempt or do not impose a tax upon transfers of personal property of residents of Minnesota having its situs in such state." [ Laws 1911, p. 278, c. 209, § 2, subd. 2.]

This provision was repealed by the next legislature, but was in force at the time of the death of Mr. Graff, and the relator contends that it exempted the succession to the personal property left by him from taxation under the Minnesota laws, for the reason that Pennsylvania levies a "collateral inheritance tax," as it is termed in the statute of that state, but levies no tax where, as in this case, the property passes to the surviving spouse.

The Pennsylvania statute [see 5 Purdon's Dig. Statutes of Pennsylvania (13th ed.) 5299, 5300] imposes an inheritance tax where the property passes by will or by the intestate laws of that state to collateral relatives or to strangers upon:

"All estates, real, personal and mixed, of every kind whatsoever, situated within this state, whether the person or persons dying seized thereof be domiciled within or out of this state;" but imposes no inheritance tax where the property passes "to or for the use of father, mother, husband, wife, children and lineal descendants born in lawful wedlock, children of a former husband or wife, or the wife or widow of the son of the person dying seized or possessed thereof."

In the case at bar, the entire property passed by will to the widow of the decedent, and is not subject to an inheritance tax under the laws of the state of Pennsylvania whether the domicile of the decedent be in that state or elsewhere. If the situation were

reversed, and the decedent had been a resident of Minnesota and the property had been located in Pennsylvania, it is true, as claimed by the relator, that no tax upon the succession would be collected in Pennsylvania; but the reason why such tax would not be collected is because Pennsylvania has no law imposing a tax upon property which passes to the surviving spouse, and not because the decedent was a resident of Minnesota. The statute of Pennsylvania exacts no tax from property which passes to the surviving spouse or to near relatives of the decedent, but exacts a tax from all property which passes by will to remote relatives or to strangers, "whether the person or persons dying seized thereof be domiciled within or out of this state." The Pennsylvania courts apparently hold that the inheritance tax of that state is a tax upon the property itself, and not upon the right of succession thereto. Coleman's Estate, 159 Pa. St. 231, 28 Atl. 137; Bittinger's Estate, 129 Pa. St. 338, 18 Atl. 132. They also hold that the fiction that the situs of personal property follows the domicile of the owner, ordinarily obtains; and that

"As a general rule, intangible personal property of a nonresident, such as bonds, mortgages and other choses in action, is governed, as to its situs, by the fiction of law above noticed, and hence such property is not subject to collateral inheritance taxation under our laws, because it is not 'situated within this state.' " Small's Estate, 151 Pa. St. 1, 25 Atl. 23.

Where they hold that the situs of the property is not in Pennsylvania, they of course hold that it is not taxable there. Countess de Noailles' Estate, 236 Pa. St. 213, 84 Atl. 665, 46 L.R.A.(N.S.) 1167; Shoenberger's Estate, 221 Pa. St. 112, 70 Atl. 579, 19 L.R.A. (N.S.) 290, 128 Am. St. 737. But they also hold that the personal property of nonresidents may acquire a situs in Pennsylvania and become subject to the inheritance tax of that state. In Small's Estate, 151 Pa. St. 1, 25 Atl. 23, the decedent, a resident of Maryland, was a member of a limited partnership which conducted a mercantile business in Pennsylvania. The court held that the Pennsylvania law exacted an inheritance tax upon his interest in such part-

nership, and in support thereof quoted the following from the New York court:

"The fiction or maxim, *mobilia personam sequuntur,* is by no means of universal application. Like other fictions, it has its special uses. It may be resorted to when convenience and justice requires. In other circumstances, the truth and not the fiction affords, as it plainly ought to afford, the rule of action. * * * I can think of no more just and appropriate exercise of the sovereignty of a state or nation over property situated within it and protected by its laws, than to compel it to contribute toward the maintenance of government and law."

In Lewis' Estate, 203 Pa. St. 211, 52 Atl. 205, the decedent was a resident of New York. The property in Pennsylvania consisted of stocks, bonds, mortgages, and other evidences of indebtedness, and of cash. It had been invested and re-invested in Pennsylvania for many years, and was being administered by the orphans' court of Pennsylvania. The court held that the law now under consideration subjected it to an inheritance tax in Pennsylvania.

The Pennsylvania statute divides those who succeed to the property of decedents by will into two classes according to the relationship which they bear to the decedent. It imposes no inheritance tax where the property passes to those who are within one class, but does impose such tax where it passes to those who are within the other class, and imposes such tax whether the decedent "be domiciled within or out of the state."

The right of succession to personal property having a situs in Minnesota is exempt from the Minnesota tax, only in case the property belonged to a deceased resident of another state, and the laws of such state impose an inheritance tax upon "transfers of personal property of decedents," but "exempt or do not impose a tax upon transfers of personal property of residents of Minnesota having its situs in such state." Our statute evinces the intention of the legislature to tax the devolution of property in all cases; but, in order to avoid double taxation in those cases where the decedent is in one jurisdiction and the property in another, it inserted the

reciprocal provision that if another state imposed such tax, but exempted therefrom personal property within that state belonging to citizens of Minnesota, Minnesota would also exempt from its tax personal property within its jurisdiction belonging to citizens of such other state. Two things are necessary to bring the residents of the foreign state within the exemption granted by our law—such state must in fact collect a succession tax, and it must not collect such tax from personal property within its jurisdiction belonging to citizens of Minnesota. If the foreign state either does not collect such tax upon the transfer of property belonging to its own citizens, or does collect it upon the transfer of personal property belonging to citizens of Minnesota, the exemption does not apply. The intention is manifest to tax all such transfers of property within our jurisdiction not taxed elsewhere, and also to tax all such transfers, in fact taxed elsewhere, unless the state imposing such other tax relieves therefrom personal property of deceased residents of Minnesota within its jurisdiction. Our statute exacts a tax upon the devolution of all property, but provides for avoiding double taxation in those cases where the other state concerned takes similar action. Where the other state divides such transfers into two general classes and imposes such a tax upon one class and not upon the other, we cannot hold that the class not taxed is within our exemption law. It is the plain purpose of the law to tax all such transfers not taxed elsewhere. But, if we concede that "a transfer tax is imposed on transfers of personal property of decedents," by Pennsylvania, within the meaning of our exemption statute, still such transfers of property having a situs in Minnesota and belonging to residents of Pennsylvania are not exempt from our tax, for the reason that Pennsylvania exacts a tax upon transfers by will to collateral legatees "of personal property of residents of Minnesota having its situs in such state." The fact that the domicile of the decedent is in Minnesota does not relieve the personal property of which he died possessed from the Pennsylvania tax; and our exemption statute applies only in case the foreign state collects no inheritance tax from the personal property of deceased residents of Minnesota. The Pennsylvania statute contains no reciprocal pro-

visions, and does not bring the property of residents of that state within the reciprocal exemption provision of our statute.

It is urged that the provision of the Minnesota statute which we have been considering is unconstitutional and void; but, as it does not apply in the present case, and has been repealed, a consideration of that question is unnecessary.

2. The relator contends that, as the Minnesota tax is not imposed upon the property itself but upon the right of succession thereto, and as the right of succession to personal property is determined and fixed by the law of the decedent's domicile, the transfer in question is not subject to taxation in Minnesota, for the reason that the right sought to be taxed is not given or created by the law of Minnesota. This question has been considered by the courts many times, and it is now well settled that personal property of a non-resident decedent may be subjected to a succession tax by the state in which such property has a situs, notwithstanding the fact that the decedent may never have been a resident of that state and that the devolution of his property is governed by the law of his domicile. The authorities are collected in a note found in 46 L.R.A.(N.S.) 1167.

3. The relator's contention that our statute should be construed as imposing a succession tax in those cases only in which the title to the property passes from the decedent to the recipient by virtue of our laws, and hence as not imposing such tax upon the devolution of the personal property of nonresidents, cannot be sustained. The statute [2] provides:

"A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association or corporation, * * * in the following cases:

"(1) When the transfer is by will or by the intestate laws of this state from any person dying possessed of the property while a resident of the state.

"(2) When a transfer is by will or intestate law, of property within the state or within its jurisdiction and the decedent was a non-resident of the state at the time of his death."

[2] [Laws 1911, p. 516, c. 372.]

There are several other provisions, too lengthy to quote, bearing upon the question, and the statute, taken as a whole, leaves no room for doubt that the legislature intended to, and did, impose a tax upon the right of succession to the personal property of nonresident decedents, in all cases in which such property is within this state, or subject to the laws of this state. State v. Probate Court of County of Ramsey, 124 Minn. 508, 145 N. W. 390, 50 L.R.A.(N.S.) 262.

4. The relator contends that the property in question is not within the state of Minnesota, nor subject to the laws of Minnesota; that it has its situs at the domicile of the decedent in the state of Pennsylvania; and that the devolution of the property is governed by the law of Pennsylvania and cannot be subjected to an inheritance tax in Minnesota.

It is usually true that the right to succeed to the ownership of the personal property of a decedent is governed by the law of the domicile of the decedent, and is subject to taxation at the place of such domicile; yet, if the one who succeeds to such ownership must invoke the law of another state before he can reduce such property to possession, or secure the beneficial enjoyment thereof, it is generally, although not universally, held that such other state also has power to exact a tax upon the privilege of taking over and securing the beneficial enjoyment of such property. Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. ed. 439; Eidman v. Martinez, 184 U. S. 578, 22 Sup. Ct. 515, 46 L. ed. 697; State v. Probate Court of County of Ramsey, 124 Minn. 508, 145 N. W. 390, 30 L.R.A.(N.S.) 262; People v. Griffith, 245 Ill. 532, 92 N. E. 313; Greves v. Shaw, 173 Mass. 205, 53 N. E. 372; State v. Dalrymple, 70 Md. 294, 17 Atl. 82, 3 L.R.A. 372; State v. District Court, 41 Mont. 357, 109 Pac. 438; Matter of Houdayer, 150 N. Y. 37, 44 N. E. 718, 34 L.R.A. 235, 55 Am. St. 642; Alvany v. Powell, 55 N. C. 51.

The right to succeed to the ownership of debts is taxable by the state having jurisdiction of the debtor, for the law of that state furnishes the means to compel payment. Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. ed. 439; People v. Griffith, 245 Ill. 532, 92 N. E. 313; State v. Dalrymple, 70 Md. 294, 17 Atl.

82, 3 L.R.A. 372; Matter of Houdayer, 150 N. Y. 37, 44 N. E. 718, 34 L.R.A. 235, 55 Am. St. 642; Re Daly's Estate, 91 N. Y. Supp. 858, affirmed 182 N. Y. 524, 74 N. E. 1116; Re Joyslin's Estate, 76 Vt. 88, 56 Atl. 281; Gregory v. Lansing, 115 Minn. 73, 131 N. W. 1010.

The state which creates a domestic corporation has the power to tax transfers of the stock of such corporation held by nonresident decedents. Greves v. Shaw, 173 Mass. 205, 53 N. E. 372; Moody v. Shaw, 173 Mass. 375, 53 N. E. 891; Kingsbury v. Chapin, 196 Mass. 533, 82 N. E. 700, 13 Ann. Cas. 738; Re Culver, 145 Iowa, 1, 123 N. W. 743, 25 L.R.A.(N.S.) 384; People v. Griffith, 245 Ill. 532, 92 N. E. 313; Dixon v. Russell, 78 N. J. Law, 296, 73 Atl. 51; Matter of Whiting, 150 N. Y. 27, 44 N. E. 715, 34 L.R.A. 232, 55 Am. St. 640; Gardiner v. Carter, 74 N. H. 507, 69 Atl. 939; Douglas County v. Kountze, 84 Neb. 506, 121 N. W. 593.

The right of succession to stock in a national bank is taxable by the state in which the bank is located, although the stock belonged to a nonresident. Greves v. Shaw, 173 Mass. 205, 53 N. E. 372; Moody v. Shaw, 173 Mass. 375, 53 N. E. 891; Re Stanton's Estate, 142 Mich. 491, 105 N. W. 1122; Re Cushing's Estate, 40 Misc. 505, 82 N. Y. Supp. 795; State v. Dalrymple, 70 Md. 294, 17 Atl. 82, 3 L.R.A. 372.

Whether the right of succession to promissory notes held by nonresidents is taxable by the state having jurisdiction over the maker does not appear to have received much attention from the courts. But it is difficult to see why the reasoning which establishes the right to tax the transfer of an ordinary debt does not also establish the right to tax the transfer of a promissory note which is merely an evidence of debt. In the Matter of Houdayer, 150 N. Y. 37, 44 N. E. 718, 34 L.R.A. 235, 55 Am. St. 642, the court states the ground upon which such taxation rests as follows:

"Where the right, whatever it may be, has a money value and can be owned and transferred, but cannot be enforced or converted into money against the will of the person owing the right without coming into this state, it is property within this state for the purposes of a succession tax. Thus the right in question is property, because

it is capable of being owned and transferred. It is within this state, because the owner must come here to get it. It is subject to taxation, because it is under the control of our laws."

In Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. ed. 439, the court say:

"It is plain that the transfer does depend upon the law of New York, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor. * * * What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. * * * Power over the person of the debtor confers jurisdiction, we repeat. And this being so we perceive no better reason for denying the right of New York to impose a succession tax on debts owed by its citizens than upon tangible chattels found within the state at the time of the death. The maxim *mobilia sequuntur personam* has no more truth in the one case than in the other. When logic and the policy of a state conflict with a fiction due to historical tradition, the fiction must give way."

The tax in question is not a tax upon property but a tax upon the right of succession thereto, and it is well settled that the rules which determine the situs of personal property for purposes of ordinary taxation are not decisive of its situs for the purpose of a succession tax. The state has undoubted power to impose a succession tax in respect to all property upon which it has power to impose an ordinary tax, and, in addition thereto, it has power to impose a succession tax in respect to certain sorts of intangible property upon which it cannot impose such ordinary tax. While there are decisions to the contrary, it is fairly well settled that debts evidenced by promissory notes are assets at the domicile of the debtor, and are sufficient to confer jurisdiction for administration purposes upon the courts of such domicile. The Supreme Court of the United States say:

"The general rule of law is well settled, that for the purpose of founding administration all simple contract debts are assets at the domicile of the debtor; and that the locality of such a debt for this purpose is not affected by a bill of exchange or promissory note having been given for it, because the bill or note does not alter the

nature of the debt, but is merely evidence of it, and therefore the debt is assets where the debtor lives, without regard to the place where the instrument is found or payable."

Wyman v. Halstead, 109 U. S. 654, 3 Sup. Ct. 417, 27 L. ed. 1068; Buck v. Beach, 206 U. S. 392, 27 Sup. Ct. 717, 51 L. ed. 1106, 11 Ann. Cas. 732; Wheeler v. Sohmer, 233 U. S. 434, 34 Sup. Ct. 607, 58 L. ed. 1030; Moore v. Jordan, 36 Kan. 271, 13 Pac. 337, 59 Am. Rep. 550. Where the courts of the debtor's domicile have jurisdiction of the debt for purposes of probate administration, it goes without saying that they have jurisdiction for the purpose of enforcing a succession tax.

It is said that bonds and commercial paper are something more than mere evidences of indebtedness, and it has been held that they may be subjected to a succession tax by the state within whose jurisdiction they are found, although neither the debtor nor the creditor are residents of such state; and this is perhaps true, but, if so, it does not divest the state having jurisdiction of the debtor of any power possessed by such state to enforce its own tax. It is unquestioned that the right to succeed to the ownership of the property of a decedent ought not to be burdened with a double tax, but it is equally unquestioned that, under some circumstances, both the state where the decedent resided and the state where his property is located, or his debtor resides, have power to impose such tax. Where the power exists, the extent to which it shall be exercised rests exclusively with the legislature. The determination of such questions is outside the domain of the courts. The case at bar involves no question of double taxation, however, for the tax now under consideration is the only tax sought to be imposed.

The relator must invoke the law of Minnesota to obtain the possession and beneficial enjoyment of the property in question. This is true as to all the sorts of property here involved, and we are of the opinion that the state has power, in respect to all such property, to tax the right to succeed to the ownership thereof. We are also of opinion that the following language of the Massachusetts court,

in respect to the statute of that state, applies with equal force to the statute of this state:

"The language of the taxing statute indicates 'an intention on the part of the legislature to tax all property that it has the power to tax. The statute is as broad as the jurisdiction of the Commonwealth.'" Peabody v. Treasurer and Receiver General, 215 Mass. 129, 102 N. E. 435.

5. The relator contends that the amendments of 1911 changed the character of the original law to such an extent that the subject of the law as it now exists is not expressed in its title, and that it is now unconstitutional for that reason.  Conceding without deciding that an amendment to a statute may bring it within the constitutional inhibition that "no law shall embrace more than one subject, which shall be expressed in its title," we think that all the provisions now in the statute could have been incorporated therein at the time of its enactment without violating this section of the Constitution.  The rule for determining whether a statute violates this provision is tersely stated in State v. Brooks-Scanlon Lumber Co. supra, page 300, 150 N. W. 912.  The other constitutional questions raised are determined against the contention of the relator by the cases of State v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L.R.A.(N.S.) 732, 7 Ann. Cas. 1056; State v. Probate Court of Hennepin County, 112 Minn. 279, 128 N. W. 18; Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. ed. 439; Wheeler v. Sohmer, 233 U. S. 434, 34 Sup. Ct. 607, 58 L. ed. 1030.

We are informed that cases involving the right to impose a succession tax upon the devolution of other sorts of property are soon to be submitted to this court, and that the parties interested therein desire to be heard before a determination is reached in respect to such matters.  For this reason we have endeavored in the present case to confine ourselves closely to the questions actually presented for decision.

Writ quashed.